Filed 6/5/26  P. v. Lopez CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JESSE LOPEZ,<br><br>    Defendant and Appellant. | E085921<br><br>(Super.Ct.No. FSB800271)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Donna G. Garza, Judge.  Affirmed with directions.

Law Office of Brad Poore and Brad J. Poore, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Christopher P. Beesley and Michael D. Butera, Deputy Attorneys General, for Plaintiff and Respondent.

## I.

## INTRODUCTION

After defendant and appellant Jesse Lopez's conviction for premeditated attempted murder (Pen. Code,[1] §§ 664/187, subd. (a)), which he had committed when he was 16 years old, along with true findings on firearm and gang enhancements, were affirmed on direct appeal, *People v. Lopez* (Mar. 25, 2011, No. E049617) [non pub. opn.] (*Lopez I*), defendant, who had served 15 years of his sentence of 42 years to life in prison, filed petition for recall and resentencing under section 1170, subdivision (d)(1)(A) (section 1170(d)(1)), arguing his sentence was functional equivalent of life without parole and violated equal protection. The trial court denied the petition and defendant appealed. On appeal, defendant contends the trial court erred in denying his petition because the court misunderstood the requirements for recall and resentencing under section 1170(d)(1) and that the error violated his right to equal protection. He thus believes the matter should be remanded for further proceedings. He also asserts that the amended abstract of judgment should be amended in accordance with this court's prior opinion. We agree with the parties that the amended abstract of judgment must again be amended but reject defendant's remaining contentions.

---

[1] All future statutory references are to the Penal Code unless otherwise stated.

2

II.

FACTUAL AND PROCEDURAL BACKGROUND[2]

On December 28, 2007, Ortuno and Joel Pastrana (Pastrana), who lived in the garage of Ortuno's family's residence, were in the front yard of their residence on 7th Street drinking beer, happy at the prospect of possibly getting jobs after filling out employment applications. While Ortuno and Pastrana chatted, a car pulled up in front of the house next door. There were four occupants in the vehicle: the driver, defendant, a woman, and the next door neighbor Rodolfo.[3] After the car pulled up in front of Rodolfo's house, Rodolfo exited the vehicle. Ortuno and Pastrana joked with Rodolfo about seeing him leave just minutes before in a white truck, and returning in the car. (*Lopez I*, *supra*, E049617.)

The driver of the car (later identified as defendant's brother Jose Lopez) got out, approached Ortuno, and demanded to know why Ortuno and Pastrana were laughing and what they were looking at. Ortuno explained they were talking to Rodolfo, and the driver insulted Ortuno. Defendant then got out of the vehicle; both defendant and the driver of the car began to assault Ortuno. In the course of the confrontation, the driver hit Ortuno

---

[2] The factual background is taken verbatim from this court's prior nonpublished opinion from defendant's direct appeal in case No. E049617. (See *Lopez I*, *supra*, E049617.)

[3] Rodolfo was known also as Celyne, owing to the fact he dressed as a woman. For clarity and consistency, we refer to him as Rodolfo, although various witnesses refer to him as Celyne.

once and defendant struck Ortuno on the arm, although Ortuno was not injured. (*Lopez I*, *supra*, E049617.)

Defendant told Ortuno he did not know who he was messing with, that they were from 7th Street. 7th Street is a subset of a San Bernardino Hispanic street gang known as Westside Verdugo. Then defendant turned to the driver and asked where the gun was. Defendant then told Ortuno they would return at night. Defendant and his brother then left in the car. (*Lopez I*, *supra*, E049617.)

Minutes later, while Ortuno and Pastrana were still in the front yard, defendant and his brother returned on foot, running toward Ortuno's residence. Defendant pulled a gun out from his waist band and fired several shots at Ortuno, hitting him in the leg, shoulder and arm. From a window inside the residence, Ortuno's mother saw defendant raise his shirt revealing the gun and shoot the weapon, although he seemed to have difficulty handling the weapon. She grabbed a machete and ran outside. Defendant was running away when she got outside. The police were called and Ortuno was transported for treatment of his injuries. (*Lopez I*, *supra*, E049617.)

Rodolfo knew defendant's family well, including his mother Barbie and his stepfather Erlindo Honesto. Rodolfo was frightened of Barbie and Erlindo Honesto, and knew that defendant and his brother Jose were both members of the 7th Street gang. The Honestos wanted Rodolfo to talk to Ortuno's mother and put pressure on him to talk to Ortuno's mother and arrange a meeting. Rodolfo approached Ortuno's mother and told her that defendant's stepfather was pressuring him to get the charges dropped against

4

defendant. Rodolfo told Ortuno's mother that defendant's mother wanted her telephone number. (*Lopez I*, *supra*, E049617.)

A short time later, in February 2008, four "cholos" tried to break into the Ortuno residence. A week later, Rodolfo was again sent to Ortuno's residence by defendant's family. Rodolfo referred to the earlier break-in and warned Ortuno's mother that she had one proof of what they were capable of and the next time a bomb could be thrown at the house. In July 2008, Rodolfo himself was threatened with a gun about coming to court while at the Honesto house after mutual friends had asked him to go over there. Barbara Honesto told Rodolfo his name had better not be on any paperwork. (*Lopez I*, *supra*, E049617.)

Defendant was charged with one count of attempted murder (§§ 664/187, subd. (a)), along with special allegations that the attempt was deliberate and premeditated, involved the use of a firearm (§ 12022.5, subds.(a), (d)), as well as the discharge of a firearm (§ 12022.53, subds.(b), (c), (d)), and that the crime was committed for the benefit of a criminal street gang.[4] (§ 186.22, subd. (b)(1)(C).) Following a trial by jury, defendant was convicted of attempted murder, and the jury made true findings on all the special allegations. At sentencing, which was held on October 16, 2009, the court committed defendant to state prison for a term of seven years to life for the attempted

---

[4] We use the shorthand expression "for the benefit of a criminal street gang" to refer to crimes which are alleged to have been committed " 'for the benefit of, at the direction of, or in association with any criminal . . . conduct by gang members,' " as provided in section 186.22, subdivision (b). (See *People v. Sok* (2010) 181 Cal.App.4th 88, 92, fn. 3.)

murder, plus a 10–year enhancement for the gang allegation, plus 25 years to life for the gun discharge enhancement, for a total sentence of 42 years to life. He was awarded presentence custody credits of 649 days for time actually spent in local custody, plus 28 days conduct credit, for a total of 677 days credit for time served. (*Lopez I*, *supra*, E049617.)

After defendant appealed, in 2011, we affirmed defendant's conviction but modified defendant's custody credits and accepted the parties' agreement that some aspects of the imposed sentence were unauthorized. (*Lopez I*, *supra*, E049617.) We modified defendant's sentence as follows: "the term specified for count 1 is modified to provide for a term of life with possibility of parole. For the gang enhancement, the 10-year term is stricken; instead, the judgment shall provide that defendant shall not be paroled until a minimum of 15 calendar years has been served. Additionally, defendant is entitled to an additional 68 days of conduct credits for a total of 96 days." (*Lopez I*, *supra*, E049617.) We made no change to defendant's 25-years-to-life term for the firearm enhancement. (*Lopez I*, *supra*, E049617.)

In November 2024, defendant filed a petition for resentencing under section 1170(d)(1). Defendant argued that he was eligible for relief under the statute, despite the fact that his sentence was not explicitly included, because his offense was committed while he was a juvenile and his punishment amounted to a de facto sentence of life without the possibility of parole (LWOP). Relying on *People v. Heard* (2022) 83 Cal.App.5th 608 (*Heard*), defendant asserted that, where a defendant's sentence amounts

6

to the functional equivalent of LWOP, equal protection demands an opportunity for resentencing under section 1170(d)(1). He also claimed that the intervening passage of section 3051, which grants him an independent right to a youth offender parole hearing, did not affect his entitlement to relief under section 1170(d)(1). In support, among other items, defendant attached character letters and certificates of completions in numerous programs.

The People filed a response brief, arguing defendant was ineligible for relief under the statute because he was not sentenced to LWOP and his sentence was not its functional equivalent under *Heard*. The People noted no case law has found such equivalent in sentences less than 50 years to life. The People further asserted that defendant's constitutional claim was inapplicable considering his alternative avenue of parole eligibility under section 3051.

The trial court heard defendant's petition for resentencing on April 10, 2025. After hearing from the parties and considering the motions filed by the parties, the trial court denied the resentencing petition, finding defendant ineligible for relief. The court explained that "I do believe he's ineligible in that he was not sentenced to life without the possibility of parole. I do believe there's other avenues in the future that he can take if he wishes some sort of relief from the sentence." Defendant timely appealed.

III.

DISCUSSION

A. *Denial of Petition for Resentencing*

Defendant contends he is entitled to recall of his sentence and resentencing pursuant to section 1170(d)(1) because his sentence of 42 years to life is the functional equivalent of LWOP. He maintains that the trial court misunderstood the requirements for recall and resentencing under section 1170(d)(1), and that equal protection concerns require that he be provided with the same opportunities for relief as those who received sentences of LWOP. Defendant further avers that his eligibility for a youth offender parole hearing does not moot his right to recall and resentencing under section 1170(d)(1). Specifically, he asserts that the court misunderstood the fact that it could grant him relief under equal protection, despite the limitations within the statutory text, if it concluded that his sentence amounted to the functional equivalent of a LWOP sentence. He further argues that, regardless of the court's understanding, its conclusion was incorrect because his sentence amounts to a de facto LWOP sentence, notwithstanding his entitlement to a youth offender parole hearing.

If the facts underlying a constitutional claim are undisputed, we review the claim de novo. (See *People v. McKee* (2012) 207 Cal.App.4th 1325, 1338 ["[T]he instant constitutional question involved mixed questions of law and fact that are predominantly legal, if not purely legal questions, which are subject to de novo review."].) We also independently review questions of statutory interpretation. (See *In re Lugo* (2008) 164

8

Cal.App.4th 1522, 1535.)  Likewise, we determine questions of mootness de novo so long as the relevant facts are uncontroverted.  (See *K.G. v. Meredith* (2012) 204 Cal.App.4th 164, 174.)  Additionally, "we review the trial court's ruling, 'not the court's reasoning and, if the [trial court's] ruling was correct on any ground, we affirm.' [Citations.]"  (*People v. Camacho* (2022) 14 Cal.5th 77, 123-124.)

Section 1170(d) "created 'a procedural mechanism for resentencing of defendants who were under the age of 18 at the time of the commission of their offenses and who were given [LWOP] sentences.' [Citation.]  Under this provision, '[w]hen a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has been incarcerated for at least 15 years, the defendant may submit to the sentencing court a petition for recall and resentencing.' [Citation.]"  (*Heard*, *supra*, 83 Cal.App.5th at pp. 617-618.)

"In the petition, 'the defendant must describe his or her remorse, relate his or her work toward rehabilitation, and state that a qualifying circumstance is true.' [Citation.]  The qualifying circumstances are (1) the defendant 'was convicted pursuant to felony murder or aiding and abetting murder provisions of law'; (2) the defendant does not have juvenile felony adjudications for assault or other violent felonies prior to the offense that resulted in the sentence being considered for recall; (3) the defendant committed the offense with at least one adult codefendant; or (4) the defendant has performed acts that tend to indicate rehabilitation or the potential for rehabilitation.  [Citation.]  'If the court

9

finds by a preponderance of the evidence that one or more of the qualifying circumstances in the petition are true, the court must recall the defendant's sentence and hold a hearing to resentence the defendant.' [Citation.]" (*Heard*, *supra*, 83 Cal.App.5th at p. 618.)

"At the resentencing hearing, the court is permitted to consider factors enumerated in the statute, along with ' "any other criteria that the court deems relevant to its decision." ' [Citation.] 'Upon conducting this assessment, "[t]he court shall have the discretion to resentence the defendant in the same manner as if the defendant had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." ' [Citation.]" (*Heard*, *supra*, 83 Cal.App.5th at p. 618.)

"[D]enying juvenile offenders sentenced to the functional equivalent of life without parole the opportunity to petition for resentencing under this provision violates the constitutional guarantee of equal protection of the laws." (*Heard*, *supra*, 83 Cal.App.5th at p. 622.) "The functional equivalent of life without parole results only when a defendant receives multiple sentences for multiple offenses, or an offense plus one or more enhancements, that add up to a lifelong prison commitment with no realistic opportunity for release. [Citations.]" (*Heard*, at p. 624 [103 years to life], italics omitted; accord *People v. Sorto* (2024) 104 Cal.App.5th 435, 440 [140 years to life]; *People v. Bagsby* (2024) 106 Cal.App.5th 1040, 1054-1061 [107 years to life]; *People v. Munoz* (2025) 110 Cal.App.5th 499, 513 (*Munoz*) [50 years to life], review granted June 25, 2025, S290828, dis. opn. of Feuer, J.; compare *Munoz*, at pp. 502-503 [50 years

10

to life is not the functional equivalent of LWOP]; *People v. Baldwin* (2025) 113 Cal.App.5th 978, 999 [44 years to life not functional equivalent of LWOP]; *People v. Thompson* (2025) 112 Cal.App.5th 1058, 1081 (*Thompson*), review granted Sept. 24, 2025, S292540 [50 years to life not functional equivalent of LWOP]; *People v. Perez* (2013) 214 Cal.App.4th 49, 57 [parole eligibility at 47 years of age was "by no stretch of the imagination . . . 'functional' or 'de facto' LWOP"].)

"To be sure, line drawing is difficult. A sentence of 50 to life is not the functional equivalent of life without the possibility of parole, but sentences of 88 to life, 103 to life, 107 to life, and 140 to life are. What about 60 to life for a 15-year-old defendant? Or 53 years eight months to life for a 20-year-old defendant? These are tough questions. But they are questions for the Legislature, which in our current system of government has responsibility for addressing such criminological problems by evaluating potential solutions and drawing lines." (*Munoz*, *supra*, 110 Cal.App.5th at p. 510.)

Since *Munoz*, three courts have rejected the *Heard* line of reasoning entirely. In *People v. Ortega* (2025) 111 Cal.App.5th 1252 (*Ortega*), review granted September 17, 2025, S292070, a court summarily denied a section 1170(d)(1) petition filed by a 17-year-old sentenced to 42 years to life. (*Ortega*, at p. 1256.) On appeal, the court, citing *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*), held: "The requirement of a youth offender parole hearing moots a juvenile defendant's constitutional claim that he is serving a sentence that is the functional equivalent of LWOP." (*Ortega*, at p. 1260.) "Here, the trial court sentenced Ortega to life in prison with the possibility of parole after

11

42 years, which would have made him eligible for parole at age 59. But due to the Legislature's later enactment of section 3051, and its requirement of youth offender parole hearings, Ortega 'is now serving a life sentence that includes a meaningful opportunity for release during his 25th year of incarceration. Such a sentence is neither LWOP nor its functional equivalent.' [Citation] Of course, we are bound by California Supreme Court precedent. [Citation.] Therefore, we need not decide whether Ortega's 42-year-to-life sentence is the functional equivalent of LWOP, and, if so, whether it is unconstitutional, because his claim is moot." (*Id.* at p. 1262.)

"[W]e hold that the trial court properly denied Ortega's section 1170(d)(1) petition because under the plain and unambiguous language of the statute[,] Ortega was not sentenced to life in prison without the possibility of parole. And we further hold that Ortega's constitutional equal protection claim is moot because he is not serving a sentence that is the functional equivalent of life in prison without the possibility of parole." (*Ortega*, *supra*, 111 Cal.App.5th at p. 1262.) The court "respectfully disagree[d] [with] the appellate court's analysis in *Heard* [because it] cannot be reconciled with the Supreme Court's analysis in *Franklin*." (*Id.* at p. 1264.)

"We find that the trial court properly denied Ortega's petition on two grounds. First, under the plain language of the statute, Ortega was not sentenced to life in prison without the possibility of parole. [Citation.] And second, Ortega's equal protection claim is moot because under clear and binding precedent he was not sentenced to a prison term that currently violates the Constitution (i.e., a sentence that is the functional equivalent of

12

life in prison without the possibility of parole)." (*Ortega*, *supra*, 111 Cal.App.5th at p. 1265, italics omitted.)

In *People v. Isayev* (2025) 113 Cal.App.5th 1117 (*Isayev*), review granted November 12, 2025, S292860, the court found "defendant is not eligible for relief under section 1170, subdivision (d), because the statute only applies to individuals sentenced to LWOP and defendant is not serving LWOP or its functional equivalent. Although a 50-years-to-life sentence, standing alone, might be functionally equivalent to LWOP [Citation] . . . defendant's sentence is distinguishable because, under section 3051 (the Youth Offender Parole Program), he will be eligible for parole at the age of 42, during his 25th year of incarceration. Thus, the trial court erred in applying *Heard*, . . . because, as a matter of law, defendant's sentence is not the functional equivalent of LWOP." (*Id.* at p. 1127, fn. omitted.)

The court further observed that the prosecution had argued that "even without section 3051 defendant would be eligible for parole at the age of 50 under section 3055 (the Elderly Parole Program), and . . . even if both sections 3051 and 3055 did not apply, defendant could substantially advance his initial parole date by earning good-conduct credits under applicable Department of Corrections and Rehabilitation regulations. [Citation.]" (*Isayev*, *supra*, 113 Cal.App.5th at p. 1127, fn. 3.)

"We conclude, contrary to *Heard*, that eligibility for resentencing relief under section 1170, subdivision (d), turns on the sentence in effect at the time of the petition, not whatever sentence originally was imposed. Thus, parole eligibility under

section 3051 may render a juvenile offender ineligible for relief under section 1170, subdivision (d), because the offender is no longer serving LWOP or its functional equivalent." (*Isayev*, *supra*, 113 Cal.App.5th at p. 1128.)

"In reaching this conclusion, we part ways with *Heard*, *Sorto*, and *Bagsby*, each of which concluded that the availability of a youth offender parole hearing under section 3051 does not render a juvenile offender ineligible for relief under section 1170, subdivision (d)." (*Isayev*, *supra*, 113 Cal.App.5th at p. 1142.) "In our view, the clear intent of section 1170, subdivision (d)(1), is to create a procedure for recall and resentencing of juvenile offenders who are serving LWOP sentences. Thus, eligibility for relief depends on the sentence that is in effect at the time the petition is filed. In other words, the defendant is eligible for relief only if the defendant "was sentenced" and is still serving an LWOP term when the petition is filed." (*Id.* at pp. 1143-1144, italics omitted.)

"We therefore agree with *Ortega*, . . . that the retroactive operation of section 3051 on a defendant's sentence is not irrelevant. If the defendant has become eligible for a youth offender parole hearing and, consequently, is no longer serving LWOP or its functional equivalent, the defendant is not eligible to petition for recall and resentencing under section 1170, subdivision (d). To the extent *Lopez*, *Heard*, *Sorto*, and *Bagsby* reached a contrary conclusion, we disagree with those decisions." (*Isayev*, *supra*, 113 Cal.App.5th at p. 1144.)

"Because section 3051 applies to this sentence, defendant is now entitled to a youth offender parole hearing at the age of 42, during his 25th year of incarceration. [Citations.] A life sentence with parole eligibility at the age of 42 is not the functional equivalent of LWOP. [Citation.] Consequently, even if equal protection principles require section 1170, subdivision (d), relief be extended to offenders sentenced to de facto LWOP terms, the trial court erred by granting defendant's section 1170, subdivision (d), petition because his sentence is not functionally equivalent to LWOP." (*Isayev*, *supra*, 113 Cal.App.5th at p. 1144.)

Finally, most recently, the court in *People v. Lara* (2025) 115 Cal.App.5th 484 (*Lara*) noted, "We acknowledge *People v. Heard*, . . . and the case law which agrees with its holding and rationale. Court of Appeal opinions, both published and not published have been inconsistent. We agree with the People that the *Heard* rule has been mooted by the Legislature. [Citations.] [¶] We do not view cases wearing 'horse blinders.' Here, appellant has been given a parole hearing and so it is plain to see that he is not presently serving the functional equivalent of LWOP. The issue is moot. As indicated, 'When the reason for a rule ceases, so should the rule.' [Citation.] Phrased otherwise, the reason for the *Heard* rule has ceased and so should the *Heard* rule itself." (*Id.* at pp. 487-488.)

Here, the court properly denied defendant's petition and there's no indication in the record that the court misunderstood the scope of its discretion. First, defendant's sentence of 42 years to life is not LWOP. Thus, he was not statutorily entitled to relief under section 1170(d)(1). (*Ortega*, *supra*, 111 Cal.App.5th at p. 1262 [The defendant

was ineligible for relief "because under the plain and unambiguous language of the statute[, the defendant] was not sentenced to life in prison without the possibility of parole"].)

Second, we agree with the courts in *Ortega*, *Isayev*, and *Lara* that defendant's eligibility for parole after 25 years of incarceration pursuant to section 3051 renders his sentence neither LWOP nor the functional equivalent of LWOP. (*Ortega, supra*, 111 Cal.App.5th at p. 1262; *Isayev, supra*, 113 Cal.App.5th at 1128; *Lara, supra*, 115 Cal.App.5th at p. 488; see *Franklin, supra*, 63 Cal.4th at p. 280 [A defendant who is serving a sentence that includes a meaningful opportunity for release during his 25th year of incarceration is serving neither LWOP nor its functional equivalent].)[5] Here, the court sentenced defendant on October 16, 2009. Thus, at latest, defendant would be entitled to a parole hearing in 2034, when he would be 43 years old.[6] "A life sentence with parole eligibility at the age of [43] is not the functional equivalent of LWOP." (*Isayev, supra*, 113 Cal.App.5th at p. 1144.) We note that at sentencing on October 16, 2009, the trial

---

[5] We recognize that *Franklin* concerned a determination of whether a sentence constituted cruel and unusual punishment, rather than whether the sentence violated equal protection as here. Nevertheless, for purposes of whether a defendant seeking resentencing pursuant to section 1170(d)(1) is serving the functional equivalent of LWOP, we find that a distinction without a difference.

[6] "If parole is not granted, the board shall set the time for a subsequent youth offender parole hearing in accordance with paragraph (3) of subdivision (b) of Section 3041.5" (§ 3051, subd. (g).) Defendant would thereafter potentially be entitled to a parole hearing as early as three years thereafter, but as late as 15 years thereafter depending on the findings of the parole board. (§ 3041.5, subd. (b) [Parole hearings thereafter at three, five, seven, 10, and 15 years depending on the findings of the parole board.].)

court awarded 677 days of credit or nearly two years of credit. Thus, even assuming defendant earned no further conduct credit, defendant would have reduced his parole eligibility date by approximately two years. (*In re Jenkins* (2010) 50 Cal.4th 1167, 1179 (*Jenkins*) ["[C]redits go towards advancing [defendant's] minimum eligible release date, . . . ."].)

Third, we think consideration of the credits defendant has and can continue to earn is proper when determining whether his sentence was the functional equivalent of LWOP. (*Jenkins*, *supra*, 50 Cal.4th at p. 1179; *Thompson*, *supra*, 112 Cal.App.5th at p. 1080 ["[J]uvenile offenders sentenced to 50 years to life might accrue conduct credits while in prison that would meaningfully shorten their sentences, while a life without parole sentence could not be modified by credits, even if accrued."].)

As noted *ante*, at sentencing on October 16, 2009, the court awarded 677 days of credit or nearly two years of credit. Thus, even assuming defendant earned no further conduct credit, he would be entitled to a parole hearing after serving approximately 41 years four months, or when he is 56 or 57 years old. However, defendant would be entitled to earn good conduct credits, which vary between 20 and 66 percent depending on the effective version of the code, the nature of the defendant's offenses, and the defendant's work while incarcerated. (Cal. Code Regs., tit. 15, § 3043.2, subd. (b).) Defendant would also be entitled to earn additional credits based on his rehabilitative and educational achievements. (Cal. Code Regs., tit. 15, § 3043.3.) In his petition, defendant enumerated numerous rehabilitative and educational achievements. Thus, defendant's

17

sentence could be reduced anywhere between approximately 12 to 39 years, making him eligible for parole from between 39 to 65 years of age. Obviously, to the extent defendant could bring his parole eligibility date down to 50 years of age or younger, his sentence would not be the functional equivalent of LWOP.

Finally, we hold that the confluence of these factors, defendant's eligibility for parole after 25 years of incarceration pursuant to section 3051, defendant's eligibility for subsequent parole hearings if his 25-year hearing is denied, his eligibility for a parole hearing at age 50, and his eligibility for a potentially substantial reduction in the minimum number of years he would have to serve before having a parole hearing pursuant to his potential to earn credits, reflect that defendant is not serving the functional equivalent of LWOP, and, is therefore, not eligible for recall and resentencing pursuant to section 1170, subdivision (d)(1). The court properly denied his petition.

B. *Correction of Abstract of Judgment*

Defendant contends that his abstract of judgment must be corrected to accurately reflect his sentence following his direct appeal. The People agree.

During his initial sentencing, defendant's aggregate 42-years-to-life sentence consisted of seven years to life for the attempted murder (§§ 664/187, subd. (a)), plus 10 years for the gang enhancement (§ 186.22, subd. (b)(1)(C)), and 25 years to life for the gun enhancement (§ 12022.53, subd. (d)).

We agree with the People that this annotation is irreconcilable with this court's order and should be removed. (*Lopez*, *supra*, E049617; see *Ayyad v. Sprint Spectrum,*

18

*L.P.* (2012) 210 Cal.App.4th 851, 860 ["the trial court must adhere to the reviewing court's directions" on remand].)  Furthermore, the 2011 abstract of judgment erroneously states a sentence of 32 years to life, which included the unauthorized seven-years-to-life sentence for count 1 alongside the firearm enhancement.  This also inaccurately reflects the sentence modification ordered by this court, and must be corrected.  (*Lopez*, *supra*, E049617; see *People v. Mitchell* (2001) 26 Cal.4th 181, 185, 188 (*Mitchell*) [courts may correct clerical errors at any time, and may order the correction of abstracts of judgment that do not accurately reflect the sentence imposed].)

The People argue that "an ambiguity remains with regard to [defendant's] resulting sentence following this court's modification" because the "prior opinion did not specify the new aggregate sentence, or identify how the changes enacted by the court interact with [defendant's] firearm enhancement."

Section 664, subdivision (a), provides that a person convicted of "attempted . . . willful, deliberate, and premeditated murder . . . shall be punished by imprisonment in the state prison for life with the possibility of parole."  Because section 664 does not prescribe the minimum term a defendant must serve for attempted willful, deliberate, and premeditated murder before that individual may be released on parole, we apply section 3046, subdivision (a), which provides, "An inmate imprisoned under a life sentence shall not be paroled until he or she has served . . . [¶] . . . [a] term of at least

19

seven calendar years."**7** In turn, section 3046, subdivision (b), provides that if, as is the case here, "two or more life sentences are ordered to run consecutively to each other . . . , an inmate so imprisoned shall not be paroled until he or she has served the term specified in subdivision (a) on each of the life sentences that are ordered to run consecutively."**8**

In accordance with that provision, under his sentence as modified by this court in his prior direct appeal, defendant is required to serve at least 40 years in prison on his indeterminate sentence before he could be released (i.e., 15 years for the attempted murder by virtue of the gang enhancement and 25 years for the gun enhancement). (See *People v. Rodriguez* (2019) 40 Cal.App.5th 194, 200-202 [noting that under § 3046, subd. (b), the minimum period of confinement for each life sentence is aggregated to determine the defendant's minimum parole eligibility; there, the Court of Appeal explained that if the defendant had been sentenced to 15 years to life in prison for attempted willful, deliberate, and premeditated murder by virtue of a gang enhancement provided under section 186.22, subd. (b)(5), along with a consecutive sentence of 25 years to life for a gun enhancement under section 12022.53, subd. (d), "his sentence

_____

**7** (See § 3046, subds. (a) & (a)(1); see also Stats. 1988, ch. 214, § 1 [version of § 3046 in effect until 2000, which contains essentially the same statutory language as the current version of subds. (a) & (a)(1)]; *People v. Salas* (2001) 89 Cal.App.4th 1275, 1280 ["Absent a determination the accused is subject to the enhanced sentencing provisions . . . or some other provision of law, a sentence for willful, deliberate, and premeditated murder is for a life term with a minimum wait for parole of seven years," citing § 3046, subd. (a)(1)].)

**8** (See § 3046, subd. (b); see also Stats. 1988, ch. 214, § 1 [version of § 3046 in effect until 2000, which contains essentially the same statutory language as the current version of subd. (b)].)

would have been two indeterminate life terms with parole eligibility after 40 years"]; *Sengpadychith*, *supra*, 26 Cal.4th at pp. 327-328 ["the gang enhancement provision [under section 186.22, subdivision (b)(5)] does not alter the indeterminate term of life imprisonment; it merely prescribes the minimum period the defendant must serve before becoming eligible for parole"].)

Based on the foregoing and to provide clarity, the amended abstract of judgment should be modified as follows: "the term specified for attempted premediated murder on count 1 is modified to provide for a term of life with the possibility of parole. For the gang enhancement under section 186.22, subdivision (b)(1)(C), the 10-year term is stricken, and defendant shall not be paroled until a minimum of 15 years has been served. For the gun enhancement in violation of section 12022.53, subdivision (d), the term is 25 years to life. Defendant's aggregate sentence is 32 years to life with parole eligibility after 40 years." (See *Mitchell*, *supra*, 26 Cal.4th at pp. 185, 188.)

IV.

DISPOSITION

The order denying defendant's petition is affirmed. The trial court is ordered to amend the amended abstract of judgment to reflect as follows: the term specified for attempted premediated murder on count 1 is life with the possibility of parole. The 10-year term for the gang enhancement under section 186.22, subdivision (b)(1)(C) is stricken, and defendant shall not be paroled until a minimum of 15 years has been served. For the gun enhancement in violation of section 12022.53, subdivision (d), the term is

21

25 years to life.  Defendant's aggregate sentence is 32 years to life with parole eligibility after 40.  The clerk of the court shall send a copy of the amended abstract to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:


MILLER

Acting P. J.


FIELDS

J.